United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEBRA DORNELL,

Plaintiff,

v.

CITY OF SAN MATEO,

Defendant.
___________________________________/

No. CV 12-06065 CRB

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Plaintiff Debra Dornell ("Dornell") sued her former employer Defendant City of San Mateo ("City") for gender discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000 et seq. ("Title VII"), and California Fair Employment and Housing Act, Cal. Gov't Code § 12940 et seq. ("FEHA"), as well as constructive termination in violation of public policy. The City moves to dismiss Dornell's First Amended Complaint ("FAC"). See MTD (dkt. 37). As explained below, the Court GRANTS the Motion in part and DENIES the Motion in part.

## I. BACKGROUND

Dornell alleges as follows. In March 2006, Dornell began working for the City as a part-time fire inspector at the San Mateo Fire Department ("SMFD"). FAC (dkt. 32) ¶ 7. When she was hired, Fire Marshal Michael Leong ("Leong") and Deputy Fire Marshal Mo Dong ("Dong") told her that she would conduct housing inspections for one year, after which she would train for inspections that would make her eligible for a full-time position. Id. ¶ 9. After one year of working for the City, Dornell asked her supervisors about a full-time position. Id. ¶ 11. Leong replied that she was ineligible for any full-time positions due to her

United States District Court
For the Northern District of California

lack of experience. Id. Yet, when she requested new assignments, Leong and Deputy Fire Marshal Bill Euchner ("Euchner") ignored, ridiculed, or denied her requests. Id. She volunteered on multiple occasions to take on a high-rise inspection, but Euchner repeatedly gave such assignments to male employees. Id. ¶¶ 11-12.

On multiple occasions, Dornell complained to SMFD Chief Daniel Belville ("Belville") that she was being limited to residential inspections. Id. ¶ 13. Dornell believes that Belville then spoke with Leong and Euchner and instructed them to give her more advanced assignments. Id. In January 2010, Leong and Euchner told Dornell that she would begin conducting Commercial Inspection Program ("CIP") inspections, in addition to residential inspections. Id. But, unlike her male counterparts doing CIP inspections, Leong and Euchner imposed on her a quota requiring her to bring in at least $35,000 to the SMFD. Id. ¶ 14. Dornell, who worked only two days per week, "knew it would be impossible . . . to meet this new expectation." Id. By June 2010, Dornell had failed to meet her quota. Id. ¶ 15.

In July 2010, Euchner informed Dornell of "new polices" that did not apply to male inspectors. Id. ¶ 16. These policies required that she increase her CIP inspections, cut her hours, take a full hour lunch break, come in later than her usual 7:00 a.m. time, and submit additional paperwork for scheduling changes that male inspectors did not submit. Id. Dornell's workload was the equivalent of three male inspectors, and when a male inspector noticed the unfair distribution of work and offered to help, Leong and Euchner refused to let him do so. Id. ¶ 17. That same month, Euchner did not adhere to company policy of providing a warning first, and instead issued Dornell a write-up on two trivial matters. Id. ¶ 18. The write-up stated that she improperly wore her employee uniform to a training with Fire Prevention Officers, even though that was standard practice, and that she "failed to follow the chain of command" when she asked Belville, instead of Euchner, to write a letter as part of her State certification process. Id.[1]

[1] On her own initiative, Dornell took classes and obtained a Fire Prevention Officer and Public Education Officer certificate. Id. ¶ 10.

In March 2010, Dornell met with Belville, who was surprised to learn that Dornell was still required to respond to housing complaints. Id. ¶ 19. Dornell, fearing retaliation, asked Belville not to intervene again. Id. That month, Dornell sought medical attention for severe stress, after which her doctor recommended that she take a leave of absence from work until the end of the month. Id. ¶ 20. In August 2010, Dornell emailed Belville to inform him that her discriminatory treatment had worsened. Id. ¶ 22. In response, Belville convened a meeting with Leong, Euchner, and a Human Relations Department employee, and instructed them to treat Dornell, also present at the meeting, fairly. Id. In a follow up meeting in October 2010, Belville again directed Leong to provide Dornell with the requisite field training. Id. ¶ 23. Nevertheless, Leong did not answer Dornell's questions and on one occasion did not show up to accompany her to a scheduled training inspection. Id. ¶ 24.

In early 2012, Euchner insinuated that Dornell should retire because her husband was retiring. Id. ¶ 25. And, in January 2012, Leong told Dornell a story about him once hitting a man on a head with a baseball bat, which she found threatening. Id. ¶ 26. Before Belville's retirement in June 2012, he told Dornell that he "had her back" and would make the new Chief aware of her situation. Id. ¶ 27. At that point, Dornell realized that the alleged discrimination would persist. Id. Following her psychologist's advice, on May 9, 2012, Dornell took leave from work due to stress. Id. ¶ 28. On September 18, 2012, Dornell sent a letter of resignation to the City. Id. ¶ 29. During her six and a half years working for the City, she was the only female to hold her position and she received favorable reviews from customer surveys and Belville. Id. ¶¶ 7-8.

On June 14, 2012, after taking leave but before resigning, Dornell filed a charge for gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Id. ¶ 28. On June 22, 2012, Dornell received a right-to-sue letter from the Department of Fair Employment and Housing ("DFEH"). Id. ¶ 45. On October 31, 2012, the EEOC issued Dornell a right-to-sue letter. Id. ¶ 34. On November 29, 2012, Dornell filed a Complaint with this Court alleging only federal claims: gender discrimination, harassment, and retaliation in violation of Title VII. Compl. (dkt. 1) at 10-11. On February

27, 2013, the parties stipulated that Dornell is not bringing a harassment claim. Stipulation Order (dkt. 15).

On August 28, 2013, Dornell filed a supplemental claim with the DFEH, asserting that she believed she was "constructively terminated." FAC ¶ 45. That same day, the DFEH issued her a right-to-sue letter. Id. On August 30, 2013, Dornell filed her FAC, which set forth the following causes of action: (1) gender discrimination and harassment in violation of Title VII; (2) retaliation in violation of Title VII; (3) gender discrimination and harassment in violation of FEHA;[2] (4) retaliation in violation of FEHA; and (5) constructive termination and discrimination in violation of public policy. Id. ¶¶ 30-57. The City now moves to dismiss. See MTD.[3]

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are presumed to lack subject matter jurisdiction, and the plaintiff bears the burden of establishing that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). The Court may look beyond the complaint to evaluate subject matter jurisdiction. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (citing Gemtel Corp. v. Cmty. Redev. Agency, 23 F.3d 1542, 1544 (9th Cir. 1994)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)(6)). Dismissal is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft

---

[2] A typo references Cal. Gov't Code § 19240 in place of Cal. Gov't Code § 12940. Id. ¶ 40.

[3] The parties request that the Court take judicial notice of the EEOC charge, initial Complaint, parties' stipulation, DFEH's second right-to-sue letter, and DFEH complaint. See generally City Request for Judicial Notice ("RJN") (dkt. 36); Dornell's RJN (dkt. 40). Because these are public records whose accuracy is not in dispute, judicial notice is appropriate. See Fed. R. Evid. 201(b)-(d); see also Anderson v. Holder, 673 F.3d 1089, 1094 n. 1 (9th Cir. 2012) ("[A court] may take judicial notice of records and reports of administrative bodies." (internal quotation marks omitted)).

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). When determining plausibility, allegations pertaining to material facts are accepted as true for purposes of the motion and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

## III. DISCUSSION

The City moves to dismiss Dornell's FAC on three grounds: (A) the parties already stipulated that Dornell is not bringing a claim for harassment; (B) a common law claim for constructive termination in violation of public policy cannot be brought against a public entity; and (C) the Court does not have jurisdiction over the claims because Dornell failed to properly exhaust her Title VII claims and because she did not timely file her FEHA claims. See generally MTD.

### A. Dornell Is Not Bringing Claims For Harassment

The City first contends that Dornell already stipulated that she is not bringing claims for harassment under Title VII. MTD at 1. Dornell concedes this point, stating that she "did not intend to assert a claim for gender harassment in violation of federal or state law." Opp'n (dkt. 39) at 1, 7. The Court therefore DISMISSES with prejudice the first and third causes of action to the extent that they allege harassment.

### B. A Statutory Claim For Constructive Termination In Violation Of Public Policy Cannot Be Brought Against A Public Entity

The City next argues that Dornell's fifth claim for constructive discharge in violation of public policy cannot be asserted against a public entity. MTD at 7 (citing Cal. Gov't Code § 815). Dornell agrees, but asks the Court to grant her leave to amend to assert a constitutionally-based claim for constructive termination. Opp'n at 11-12 (citing Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 899 (2008) ("The Legislative Committee Comment to section 815 states: 'This section abolishes all common law or judicially declared

United States District Court
For the Northern District of California

forms of liability for public entities, except for such liability as may be required by the state or federal constitution'")).

Although the City points out that Dornell's Opposition "has not indicated what constitutional violation she is going to assert, what facts in her complaint support the same, and whether such alleged violation is being brought under state or federal law," see Reply (dkt. 43) at 1, amendment is not necessarily futile. In fact, Dornell's FAC explicitly states that her fifth cause of action is a violation of not only common law but also her constitutional rights under California Constitution, Article 1, section 8, which prohibits disqualification from entering or pursuing a business on the basis of sex. FAC ¶ 54. Because this constitutional provision could support a viable claim for constructive termination in violation of public policy, the Court DISMISSES the fifth cause of action with leave to amend.

**C. The Court Has Jurisdiction Over Dornell's Title VII Claims Only**

The City next avers that Dornell did not properly exhaust her administrative remedies for her Title VII claims and that, to the extent that she did exhaust her FEHA claims, they were untimely. MTD at 7-10.

**1. Exhaustion Generally**

A claimant must exhaust his or her administrative remedies before filing a discrimination or retaliation case in federal court. Rodriguez v. Airborne Express, 265 F.3d 890, 896 (9th Cir. 2001). To properly exhaust these claims, a claimant must first file the charge with either the EEOC (enforcing Title VII) or the DFEH (enforcing FEHA). A claimant must file a charge with the EEOC within 180 days of the alleged violation, 42 U.S.C. § 2000e-5(e)(1), or else with the DFEH within one year of the alleged unlawful conduct, Cal. Gov't Code § 12960(d).[4] When Title VII and FEHA claims overlap, under the worksharing agreement, the EEOC and DFEH are each the agent of the other for purposes of receiving charges, and thus a filing with one agency is considered to be constructively filed

---

[4] If the claimant elects to first file a complaint with a state or local agency like the DFEH, the EEOC charge must be filed within the earlier of 300 days after the alleged unlawful employment practice or thirty days after receiving notice that the state or local agency has terminated proceedings. 42 U.S.C. § 2000e-5(e)(1).

United States District Court
For the Northern District of California

with the other. See, e.g., EEOC v. Dinuba Med. Clinic, 222 F.3d 580, 585 (9th Cir. 2000) ("Constructive filing is made possible by 'worksharing agreements,' which designate the EEOC and the state agency each other's agents for the purpose of receiving charges."); Paige v. State of Cal., 102 F.3d 1035, 1041 (9th Cir. 1996) ("[T]he filing of a charge with one agency is deemed to be a filing with both.").

A claimant cannot file a lawsuit until receiving a right-to-sue notice from the agency that specifically enforces those laws. See Alberti v. City & Council of S.F. Sheriff's Dept., 32 F. Supp. 2d 1164, 1174 (N.D. Cal. Nov. 25, 1998) ("An EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of remedies as to FEHA claims."); see also Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1726 (1994) ("an EEOC right-to-sue notice satisfies the requirement of exhaustion of administrative remedies only for purposes of an action based on Title VII"). If a claimant receives a right-to-sue notice, he or she has one year from receipt of a DFEH letter to file FEHA claims, Cal. Gov't Code § 12965(b), but only ninety days from receipt of an EEOC letter to file Title VII claims, 42 U.S.C. § 2000e-5(f)(1).

### 2. Dornell's Exhaustion Generally

Here, the allegations that form the basis of Dornell's first four causes of action—gender discrimination and retaliation in violation of state and federal law—all relate to incidents before May 9, 2012, the date on which Dornell took leave from work. See FAC ¶¶ 30-51.[5] The FAC cites the following encounters that took place throughout Dornell's time working for the City, in support of gender discrimination and retaliation claims, respectively:

(1) "[The City] singled Dornell out because of her gender and treated her differently than her similar situated male counterparts." FAC ¶¶ 31, 41;

(2) "Dornell engaged in protected activity . . . by complaining to Chief Belville about Leong and Euchner's discriminatory treatment of her. Leong and Euchner then retaliated against Dornell for her complaint by imposing on

[5] Conduct prior to the 300-day mark is actionable if the plaintiff can show that the acts are part of a "continuing violation." Williams v. Owens-Ill., Inc., 665 F.2d 918, 924 (9th Cir. 1982) (applying to Title VII claims); Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 823 (2001) (applying to FEHA claims). Under the continuing violation doctrine, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." Williams, 665 F.2d at 924.

> her a quota to which no male fire inspector was held, and writing her up for trivial alleged violations. When Dornell sought further help from Human Resources and Chief Belville, Leong and Euchner retaliated against her again by ignoring her and further obstructing her ability to work." Id. ¶¶ 36, 47.

Based on these allegations, constructive discharge is not part of Dornell's first four causes of action, and the last day she was at the SMFD being discriminated against was when she took a leave of absence on May 9, 2012.[6] Accordingly, Dornell had 180 days from May 9, 2012, or until November 5, 2012, to file a charge with the EEOC. See 42 U.S.C. § 2000e-5(e)(1). Dornell timely filed her EEOC charge on June 14, 2012, FAC ¶ 28, and under the worksharing agreement it was deemed to be filed with the DFEH as well, see Dinuba Med. Clinic, 222 F.3d at 585.

Because Dornell received a right-to-sue notice from the DFEH on June 22, 2012, FAC ¶ 28, she had one year, or until June 22, 2013, to bring her FEHA claims, see Cal. Gov't Code § 12965(b). Dornell did not bring any FEHA claims until August 30, 2013, when she filed her FAC. See FAC ¶¶ 40-51. Because the EEOC issued Dornell a right-to-sue letter on October 31, 2012, id. ¶ 34, Dornell had ninety days, or until January 29, 2013, to bring her Title VII claims, see 42 U.S.C. § 2000e-5(f)(1). Her original Complaint alleging Title VII claims was timely filed on November 29, 2012. See Compl.

### 3. Dornell's Title VII Claims

Dornell's first and second causes of action allege gender discrimination and retaliation under Title VII. FAC ¶¶ 30-39. The City challenges these claims, arguing that they are inextricably linked to her alleged constructive termination. MTD at 9-10. First, the City avers that Dornell did not exhaust administrative remedies because she filed her EEOC claim before she resigned. Id. at 9. Second, the City argues that even if this Court construes Dornell's pre-resignation EEOC charge as providing for a right-to-sue action, it was untimely; i.e., Dornell's FAC missed the ninety-day window to file a claim. Id. at 10 (citing 42 U.S.C. § 2000e-5(f)(1)). Both of the City's arguments fail.

[6] Unlike Dornell's first four causes of action, her fifth cause of action explicitly alleges "constructive termination" as a component of her discrimination claim. Id. ¶ 54.

First, the City contends that Dornell's Title VII allegations needed to be re-filed with the EEOC after she resigned. Id. at 9. The City points to language in the FAC's Introduction section alleging that Dornell "was constructively discharged when she resigned." Id. The City explains that, because the FAC's first and second causes of action re-allege and incorporate all preceding paragraphs, those causes of action also allege constructive discharge, thus requiring that she file another EEOC charge "as to her constructive discharge claim under Title VII." Id. But Dornell's Title VII claims do not incorporate a constructive discharge claim. The allegations supporting her Title VII claims remained the same in both the original Complaint and the FAC. Compare Compl. ¶¶ 29, 34, with FAC ¶¶ 31, 36. Dornell's Title VII claims allege that she was treated differently than similarly situated male counterparts, given quotas unique to her as a woman, and retaliated against for notifying Belville of her situation. Id. Those events were completed by the time she took a leave of absence from work on May 9, 2012 and filed her EEOC charge on June 14, 2012. Id. ¶ 28. Consequently, Dornell's first and second causes of action were properly exhausted when she filed with the EEOC on June 14, 2012.[7]

Second, the City argues that even if Dornell's June 14, 2012 pre-resignation EEOC charge is sufficient for the purposes of exhausting her Title VII claims, the lawsuit was nonetheless untimely because her August 30, 2013 FAC was filed more than ninety days after she received her October 31, 2012 EEOC right-to-sue letter. MTD at 10 (citing 42 U.S.C. § 2000e-5(f)(1)). But because the FAC's Title VII claims repeat the allegations in her original Complaint verbatim, compare Compl. ¶¶ 29, 34, with FAC ¶¶ 31, 36, the claims relate back to her original Complaint for purposes of the statute of limitations. See Hebner v. McGrath, 543 F.3d 1133, 1137-38 (9th Cir. 2008) ("amendments made after the statute of

---

[7] Even if Dornell's Title VII claims did include constructive discharge, a lawsuit "may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002) (internal quotation marks omitted). Subject matter jurisdiction extends to allegations "reasonably expected to grow out of the charge of discrimination," including constructive termination. Id.; see also Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1082 (9th Cir. 2000) (holding that the plaintiff's wrongful termination was "unquestionably 'like or reasonably related to'" the allegations of discrimination made in her earlier EEOC charge and thus she did not fail to exhaust her administrative remedies).

limitations has run may 'relate back' to the date of the original pleading when the amended pleading arises 'out of the conduct, transaction, or occurrence set out . . . in the original pleading'" (quoting Fed. R. Civ. P. 15(c)(1)). Consequently, the filing date of Dornell's original Complaint is the operative pleading for purposes of the statute of limitations.

Dornell received her right-to-sue letter from the EEOC on October 31, 2012, FAC ¶ 34, and had ninety days, or until January 29, 2013, to file her Title VII claims with this Court, see 42 U.S.C. § 2000e-5(f)(1). She filed her original Complaint alleging Title VII claims on November 29, 2012, see Compl., and it was therefore timely. The Court thus has jurisdiction over Dornell's Title VII claims and DENIES the City's Motion with respect to the first and second causes of action.

**4. Dornell's FEHA Claims**

Dornell's third and fourth causes of action allege gender discrimination and retaliation under FEHA. FAC ¶¶ 40-51. The City contends that Dornell's FEHA claims are time barred because she did not file those claims with this Court within one year of receiving her DFEH right-to-sue notice on June 22, 2012. MTD at 7. In addition, the City argues that she cannot "restart the clock" by filing a second duplicative administrative charge with the DFEH on August 28, 2012. Id. at 2, 8. Dornell responds that her August 28, 2012 DFEH administrative complaint does not simply repeat her previously filed EEOC charge; instead, it "recited that she was forced to resign." Opp'n at 10 ("her first charge of discrimination with DFEH on June 14, 2012 . . . did not claim that she had been forced to resign by the [City's] continuing course of discriminatory and retaliatory conduct").

Importantly, Dornell's third and fourth claims alleging FEHA violations do not incorporate constructive discharge. See FAC ¶¶ 41, 47. The allegations supporting Dornell's gender discrimination and retaliation claims under FEHA mirror those of her Title VII claims verbatim—both only describe discrimination at SMFD. Compare id. ¶¶ 31, 36, with id. ¶¶ 41, 47. Thus, like Dornell's Title VII claims, her FEHA claims are limited to acts that occurred before she took a leave of absence from work on May 9, 2012. See Part III.C.3, supra. Accordingly, Dornell cannot rely on the filing date of her August 28, 2012

United States District Court
For the Northern District of California

supplemental DFEH charge because that charge adds only a claim of "constructive discharge," which is not at issue here. See Dornell RJN, Ex. B. Instead, Dornell's June 14, 2012 EEOC charge, FAC ¶ 28, which the DFEH constructively received under the worksharing agreement, see Dinuba Med. Clinic, 222 F.3d at 585, is the relevant administrative filing for the purposes of her third and fourth causes of action.

The DFEH issued a right-to-sue notice on June 22, 2012, FAC ¶ 28, and Dornell had one year from that date, or until June 22, 2013, to file her FEHA claims, see Cal. Gov't Code § 12965(d). Because her FAC, filed on August 30, 2013, was the first time she brought FEHA claims, see FAC ¶¶ 40-51, the Court does not have jurisdiction over those claims. The Court therefore DISMISSES Dornell's third and fourth causes of action.

## IV. CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS the Motion without leave to amend to the extent that the first and third causes of action allege acts of harassment;

(2) GRANTS the Motion with respect to the fifth cause of action alleging gender discrimination on the basis of constructive discharge in violation of public policy, with leave to amend;

(3) DENIES the Motion with respect to the first and second causes of action alleging violations under Title VII; and

(4) GRANTS the Motion without leave to amend with respect to the third and fourth causes of action alleging violations under FEHA.

**IT IS SO ORDERED.**

Dated: November 7, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE